## In re FOLDING CARTON ANTITRUST LITIGATION.

### No. MDL 250.

United States District Court,
N. D. Illinois, E. D.

Sept. 21, 1977.

Perry Goldberg, Co-Chairman, Plaintiffs' Executive Committee, Specks & Goldberg, Ltd., Chicago, Ill., Lee A. Freeman, Sr., Co-Chairman, Plaintiffs' Executive Committee, Freeman, Rothe, Freeman & Salzman, Chicago, Ill., James B. Sloan, Plaintiffs' Coordinating Secretary, Sloan & Connelly, Chicago, Ill., for plaintiffs.

John J. McHugh, Chairman, Defendants' Executive Committee, Chadwell, Kayser, Ruggles, McGee & Hastings, Chicago, Ill., Donald G. Kempf, Jr., Co-Chairman Defendants' Executive Committee, Kirkland & Ellis, Chicago, Ill., Roger B. Harris, Defendants' Coordinating Secretary, Altheimer & Gray, Chicago, Ill., for defendants.

Before ROBSON, Senior District Judge, and WILL, District Judge.

PRETRIAL ORDER NO. 24

MEMORANDUM AND ORDER

Pursuant to Rule 37(a)(2) of the Federal Rules of Civil Procedure, this cause is be-fore the court for ruling on plaintiffs' motion to compel production of documents in response to their First Joint Request for Production of Documents, and on defendants' motion to compel production of documents in response to their Revised Joint Rule 34 Request.

This is a class action seeking to redress alleged antitrust violations in the folding carton industry. *See In Re Folding Carton Antitrust Litigation*, 75 F.R.D. 727 (N.D.Ill. 1977). Pursuant to Local Rule 12(d), the parties have conferred on several occasions and have been unable to reach an agreement with respect to certain objections to plaintiffs' and defendants' document requests. We deal first with plaintiffs' motion which is granted as modified herein.

## I. PLAINTIFFS' MOTION

### A. THE DEFINITION OF "COMPANY" IN THE REQUESTS

One of the major impasses concerns the definition of the term "company" in plaintiffs' Requests. As propounded, Definitions (a) and (b) read as follows:

(a) 'Your company' means the company on which this request was served, its predecessors, subsidiaries, its parent organization (if any), branches, divisions and affiliates and any person acting or purporting to act in its behalf;

(b) 'Company' or 'Companies' means the individuals, proprietorship, trusteeship, partnership, corporation, association, cooperative, or any other form of legal entity, including their predecessors, successors, parent organizations, affiliates and wholly-owned or controlled subsidiaries, and any agent or any other person acting or purporting to act on their behalf.

1. *Defendants' Refusal to Produce Documents in the Possession of Former Employees*

All defendants object to the definition of the term "company" to the extent that it

includes former employees. They submit that Rule 34 requires a party to produce only those documents in its possession, custody or control. Arguing that former employees are no longer within their control—even if they are receiving money or goods from defendants—defendants decline even to seek documents from such former employees. Plaintiffs disagree and contend that at a minimum defendants should make inquiry of such former employees.[1]

While the request is overbroad in that it would encompass persons and entities such as predecessors or successors over which defendants may have no control or with which they may have no connection, we agree with plaintiffs as to former employees still receiving economic benefits from defendants. It is well settled that a Rule 34 motion for the production of documents is entitled to broad and liberal treatment. *Goldman v. Checker Taxi Company*, 325 F.2d 853 (7th Cir. 1963). It is also well settled that a party need not have actual possession of documents to be deemed in control of them. 4A Moore's Federal Practice, ¶ 34.17, p. 34–98. The test is whether the party has a legal right to control or obtain them. *Buckley v. Vidal*, 50 F.R.D. 271 (S.D.N.Y.1970). This depends on the facts of the case.

In *Herbst v. Able*, 63 F.R.D. 135 (S.D.N.Y.1972), the court ordered a corporate defendant to produce a former employees' S.E.C. testimony, even though the corporation would only be able to obtain the transcript if the witness himself requested it. In the case at bar, the defendants have been asked to produce corporate documents which their employees obtained or prepared in the course of their duties.[2] Moreover, plaintiffs have modified their definition to include only those former employees who receive compensation from defendants in

cash or in kind. While the right to withhold payment does not *ipso facto* mean that defendants will be able to procure the documents, it is clearly an indicia of control. At the very least, defendants should make inquiry of such former employees. This is especially true where, as here, defendants do not assert that the former employees are unwilling or unable to cooperate. *Herbst v. Able, supra* at 138.

Defendants correctly point out that the *Herbst* court recognized that the corporation might be unable to secure the cooperation of its former employees and that the plaintiffs might have to file a new motion for an order directing the employee to procure a copy of his testimony. However, such possibilities do not support defendants' refusal to produce. If the former employees do not cooperate, we can then consider what further action may be required. In the meantime, we assume that, if defendants contact their former employees who still receive compensation from them, they will secure the requested documents and can produce them for plaintiffs.

2. *F. N. Burt's Refusal to Produce Documents in the Possession of its Canadian Parent Corporation*

Defendant F. N. Burt Company, Inc. ("Burt") is a subsidiary of Moore Corporation Limited ("Moore"), a Canadian corporation. Burt originally objected to the definition of the term "company" insofar as it relates to manufacture or marketing of folding cartons outside of the United States. It further objected insofar as the definition required production of documents in its parent's custody, on the ground that it has no control over it.

Plaintiffs vigorously argued that Burt's refusal to produce was unjustified.

---

1. On page 2 of their attachment to the affidavit of Thomas M. Stringer, plaintiffs state that they "consider any former officer or employee who a defendant is paying in cash or in kind, as a consultant or otherwise, as being under the defendants' control for purposes of the Requests."

2. In another context, it has been held that if the officer cannot properly discharge his corporate duties without keeping such documents, they are considered corporate documents. *In Re Grand Jury Proceedings*, 349 F.Supp. 417, 419 (N.D.Ohio 1972). *See also In Matter of Grand Jury Investigation*, 338 F.Supp. 1379, 1380 (W.D.Pa.1972).

Thereafter, the affidavit of Donald E. Chapman, the Assistant Secretary of F. N. Burt Company, Inc., was filed. In it, Mr. Chapman swears that he searched Moore's files to determine the existence and location of any documents called for by Plaintiffs' Joint Request. He states that "in addition to the information being made available by Burt, only the following documents from Moore's files are called for by Plaintiffs' Joint Request—certain published annual reports issued by folding carton manufacturers other than Burt." Mr. Chapman asserts that these reports are called for by Plaintiffs' Joint Request No. 43 as " 'documents reporting or describing manufacturing or marketing . . . activities by other folding carton manufacturers' and may also be responsive to Plaintiffs' Joint Requests Nos. 5 and 6 to the extent that they were received by Moore from such other manufacturers." He states that the documents will be made available voluntarily at Burt's offices.

Mr. Chapman's affidavit has not been refuted by plaintiffs. We can only conclude that the issues raised by Burt's objection to the term "company" are mooted and do not require action by us.

### B. PARTICULARITY

Plaintiffs' Requests Nos. 49 and 50, as modified, read:

*49.* All documents falling within the scope of the subpoenas issued by the Chicago Grand Jury and served upon your company or its personnel, but not submitted thereto.

*50.* All documents otherwise falling within the scope (except temporal scope) of the subpoenas issued by the Chicago Grand Jury and served upon your company or its personnel, but which have been

prepared or received since the return date of the subpoenas.

Request No. 51 reads:

*51.* All documents as to which a claim of privilege was made in response to subpoenas issued by the Chicago Grand Jury.

Plaintiffs' Request Nos. 49, 50 and 51 each refer to documents which fall within the scope of the grand jury subpoenas served on defendants, but which were not produced to the grand jury. Defendants refuse to produce these documents on the grounds that the requests are vague and ambiguous and that they fail to describe any documents with reasonable particularity.[3] Plaintiffs contend that their requests are sufficiently precise.

Rule 34(b) provides in pertinent part that a request for production of documents "shall set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularity." What is reasonably particular depends upon the facts and circumstances in each case. *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.,* 58 F.R.D. 348 (S.D.N.Y.1973). The test " 'is whether a reasonable man would know what documents or things are called for.' " *Id.* at 354, citing 4A J. Moore's Federal Practice, ¶ 34.07 at 34–56 & n. 18.

■ In our opinion, Request Nos. 49–51 comport with the reasonable particularity requirement of Rule 34 and defendants can identify the documents demanded by plaintiffs. The requests designate by well described categories and specific time periods the documents to be produced.[4] This is all that is required under Rule 34. *Securities & Exch. Comm. v. American Beryllium & Oil Corp.,* 47 F.R.D. 66 (S.D.N.Y.1968).

In *Mallinckrodt Chemical Works v. Goldman, Sachs & Co., supra,* the court granted

---

**3.** Defendants have agreed to comply with the court's April 1, 1977, directive regarding identifying documents which they may claim to be privileged. (Defendants' Memorandum in Opposition to Plaintiffs' Motion at pages 2–3).

**4.** It is difficult to understand how defendants can find these requests ambiguous when they

have agreed to answer plaintiffs' modified Request No. 47, which reads as follows:

All statements, narrative responses and other documents submitted in response to the subpoenas issued by the Chicago Grand Jury and not heretofore made available for inspection and copying by plaintiffs in discovery proceedings herein.

plaintiffs' motion to compel production of all documents submitted to the S.E.C. in a prior investigation. Plaintiffs likewise request documents falling within the scope of a prior investigation. The mere fact that they request documents which were *not* produced to the grand jury is irrelevant to defendants' position that the requests are not sufficiently particular. Finally, we do not find *Branerton Corp. v. Commissioner of Internal Revenue*, 64 T.C. 191, 20 F.R. Serv.2d 690 (U.S. Tax Court 1975), upon which defendants rely, controlling here.

## C. *IRRELEVANCE, BURDENSOME, OPPRESSIVE*

Certain defendants object to Requests Nos. 4, 7, 29, 32, 41, and 45 on the grounds that they are irrelevant, burdensome, and oppressive.[5] The requests read as follows:

*4 and 29* : Documents sufficient to show the name, title and last known business address and residence address of each officer, director or employee of your company who attended any meetings of any trade association listed in response to paragraph 3[28].

*7 and 32* : All documents which record, or which refer or relate, in whole or in part, to any request, suggestion, or proposal made to your company by, or by your company to, any other folding carton manufacturer, or to any agreement or understanding with any other folding carton manufacturer with respect to:

(a) The terms of any bid or price quotation for the sale of folding cartons;

(b) The exchange of, transmission of, prices, price lists or costs of pricing data; and

(c) Any price which any folding carton manufacturer was charging, or planned to charge, any customer or prospective customer of folding cartons.

*45* : All documents reflecting or relating to communications, oral or written, by defendant, or its officers, agents, or employees, with any other folding carton manufacturer in the United States, or its officers, agents, or employees, on the following subjects:

(a) Prices charged or suggested to be charged for folding cartons.

(b) Actual or proposed allocations of territories among folding carton manufacturers.

(c) Actual or proposed allocation of customers among folding carton manufacturers.

(d) Price allowances, discounts, and rebates granted or to be granted, or denied or to be denied, in connection with the sale of folding cartons.

*41* : All documents reflecting or relating to meetings conducted by, or at the instance of, or on the business premises of, any trade association in the folding carton industry of which defendant belonged.

It should be noted that plaintiffs have offered to exclude some of the documents (Paperboard Packaging Council [PPC] minutes, agendas, and announcements of meetings) which they have obtained directly.

■ Defendants contend that they should not be required to produce these documents because they would relate to the issues in the case only marginally, if at all. The argument is misguided. It is well settled that to be discoverable documents need only be relevant to the *subject matter* involved

---

5. Defendants had objected to Request No. 42, and in their motion, plaintiffs requested an order compelling production of the documents requested therein. In their attachment to the motion and memorandum, plaintiffs stated that they had not received a response to their offer to exclude specifically designated PPC reports from Request No. 42. Stephen Shamberg's letter of June 28, 1977, to Jack Chestnut indicates that defendants have responded and they agree to the plaintiffs' limitation. The request, as modified, therefore reads as follows:

All documents which state or summarize the share (for illustration, in dollars, tonnage, square feet of bending boxboard, or any other units of measure) of the folding carton market in the United States or in any state or region thereof for any defendant or other folding carton manufacturer excluding PPC periodic reports.*

* Plaintiffs will not accept the exclusion of unspecified PPC periodic reports.

in the pending litigation and not the issues raised by the pleadings. *United States v. International Business Machines, Corp.*, 66 F.R.D. 180 (S.D.N.Y.1974); *Foremost Promotions v. Pabst Brewing Co.*, 15 F.R.D. 128 (N.D.Ill.1953).

■ Moreover, it is clear that these requests are relevant to plaintiffs' efforts to obtain information about the prices of folding cartons and defendants' possible violations of the antitrust laws. For example, the documents relating to intra-company transfers and bona fide sales between defendants, Requests Nos. 7, 32, and 45, are relevant to plaintiffs' efforts to develop evidence concerning industry price structures and price movements. As plaintiffs have stated in their brief at page 9:

. . . the prices at which a defendant transfers folding cartons from one division or subsidiary to another may be significant when compared to the price charged customers for the same or similar products. Similarly, the prices which defendants charge each other may provide equally significant comparisons vis-a-vis non-defendant customers of comparable size and location ordering identical or similar products.

Requests Nos. 4 and 29, which ask defendants to identify those persons who attended trade association meetings, are a relevant prelude to taking depositions of the identified individuals. Defendants should produce the documents requested.

Request No. 41 calls for production of all documents relating to trade association meetings. Although plaintiffs have offered to exclude some of the documents which they have obtained directly, defendants nonetheless contend that the number and nature of the documents described by these requests will require them to undertake massive and disruptive searches. They argue that the likely product of such searches will include documents relating to the engineering, technological, and environmental aspects of the packaging industry, rather than to sales of folding cartons. They further maintain that such documents are likely to be filed according to their subject matter, rather than being kept together as trade association documents. Additionally, defendants contend that, contrary to plaintiffs' assertion that defendants will know which employees' files to search, the documents are likely to be retained, on a sporadic basis, by whichever individuals within a company find them interesting. Under these circumstances, they submit that ". . . the added benefit of more detail, if any, to be provided by such records is outweighed by the burden imposed. . . *Carlson Companies v. Sperry & Hutchinson Co.*, 374 F.Supp. 1080, 1084 (sic) (D.Minn. 1974)." Defendants' Brief at 10.

While it may well be true that trade association documents relating to engineering, technological and environmental aspects of the packaging industry may not be as important to plaintiffs as documents relating to prices and sales of folding cartons, such documents are nevertheless relevant. It is possible that they contain evidence, or could lead to evidence, of organized and concerted action by the defendants. "That production of documents would be burdensome and expensive and would hamper some of the defendants' business operations is not in itself a reason for refusing to order discovery which is otherwise appropriate." 4A Moore's Federal Practice, ¶ 34.19[2] p. 34–106. In the event that defendants are unwilling to undertake the searches necessary to respond to these requests, the alternative is to permit plaintiffs' counsel to search through defendants' files and ascertain the relevant documents.

## D. *RELEVANCE OF FINANCIAL INFORMATION*

Requests Nos. 15 and 17 read, respectively, as follows:

*15.* A copy of your company's annual reports, balance sheets, profit and loss statements and intra-company annual financial reports on your company's folding carton operations.

*17.* Documents sufficient to show the annual revenues and profits before taxes derived by your company for the sale of folding cartons.

Plaintiffs state that all defendants except for Gulf States have agreed to produce documents reflecting financial information. Plaintiffs argue that such information is clearly relevant.

Defendants assert that their agreement to produce is contingent on plaintiffs producing their own analogous financial documents in response to Defendants' Joint Request Number 16. They also note that Gulf States stands on its objection.

▮ Apparently, the defendants are of the opinion that what is sauce for the goose is sauce for the gander. While we agree that discovery is generally a two-way street, *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947), there are exceptions. There clearly is no correlation between defendants' balance sheets, sales figures, profit and loss statements, etc., and plaintiffs'. The antitrust laws do not require that those seeking to enforce them have any particular financial condition. Whether the plaintiffs should be required to produce such financial information is a separate question.

▮ The financial information here requested may help plaintiffs determine whether or not defendants enjoyed unreasonably high or excessive profits, facts which are relevant to the issues here involved. In addition, courts have often required defendants to produce the type of basic financial information sought here. *See, e. g., Trans World Airlines, Inc. v. Hughes,* 29 F.R.D. 523 (S.D.N.Y.1961).

For the reasons stated, it is therefore ordered that plaintiffs' motion to compel production of documents in response to the First Joint Request for Production of Documents is granted as modified herein.

## II. *DEFENDANTS' MOTION*

We turn now to defendants' motion to compel production of documents as set forth in their revised Requests Nos. 3, 4, 5, and 16. Defendants assert that plaintiffs have objected to the requests with the blanket assertion that the documents are not relevant and that production would be oppressive, unduly burdensome, and expensive. Defendants submit that plaintiffs' objections reflect the erroneous belief that discovery is a one-way proposition and that it should be limited to *their* theory of the case.

Plaintiffs respond that they have not objected to certain of the revised requests *in toto,* but rather have made narrow objections and sought minor modifications in order to bring the requests within the proper scope of discovery. They state that in only one of the four instances have they objected to the request in its entirety.

▮ In order to best resolve the differences between the parties, we will examine each request, and the parties' positions with respect thereto, separately. We begin with revised Request No. 5, which reads as follows:

Documents sufficient to show Plaintiff's procedures, practices or policies for the procurement of folding cartons, including all budgets and cost guidelines and a sample of each procurement form used.

Defendants submit that these documents are essential to the preparation of their case and basic to their understanding of plaintiffs' purchases of folding cartons. Moreover, they submit that such documents are directly relevant to the issues of whether the alleged conspiracy had any impact upon plaintiffs and whether the market for folding cartons functioned consistent with normal economic forces or was affected by any alleged conspiracy.

Plaintiffs object solely to the inclusion of the phrase "including all budgets and cost guidelines." They contend that the relevant information in this case is the price actually paid for folding cartons and not detailed budget cost information, which, they state, is proscribed by the recent decision in *Illinois Brick Co. v. State of Illinois,* 431 U.S. 72, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) (hereinafter *Illinois Brick* ). Plaintiffs note that they claim that they paid prices which were higher than they should have because of a price-fixing agreement

among the defendants. They submit that whatever price a plaintiff paid, it paid. They argue that budgets and cost guidelines have nothing to do with this case and that only the fact and amount of payment are relevant since under *Illinois Brick* whether or not they passed on any illegal price is irrelevant. They further contend that requiring production of such documents would be unduly burdensome and expensive.

We disagree with plaintiffs. As previously pointed out, Rule 26 of the Federal Rules of Civil Procedure permits discovery of any matter which is relevant to the subject matter involved in the pending action, including the claims and defenses of either party. Contrary to plaintiffs' suggestion, the subject matter of this litigation is not solely concerned with the fact and amount of payment for folding cartons. In determining whether there was in fact an overcharge, it may be necessary to establish what the market value of the folding cartons at issue was.[6] As defendants correctly point out, one way to ascertain this value is to examine plaintiffs' budget and cost guidelines, since they may reflect the value plaintiffs placed on folding cartons, although it is obvious that they may also simply reflect the prices defendants were charging. Defendants note that Eugene J. Balis, an employee of plaintiff Berman Manufacturing Company, admitted in his deposition that budget and cost guidelines were used as negotiating tools to induce certain suppliers to lower their prices. Accordingly, the documents sought in revised Request No. 5 may be helpful in ascertaining the market value of certain folding cartons and relevant to whether excessive prices were charged. Plaintiffs should produce these documents.

Revised Request No. 3 reads as follows:

All documents which record or refer, in whole or in part, to Plaintiff's specifications, including the development and modification of such specifications. Indicate the product(s) packed in such folding cartons to the extent that the product(s) is not stated on the document.[7]

Defendants argue that this request is relevant not only because it relates to plaintiffs' purchases of folding cartons, but also because it seeks basic information concerning factors which comprise defendants' prices for folding cartons. They submit that such information is central to their main case that the prices charged plaintiffs were the fair and reasonable market prices. They assert that federal courts in price-fixing cases have consistently allowed evidence relative to what constitutes a fair and reasonable price. Moreover, defendants assert that the information sought is directly relevant to the issues of impact and damages.

Plaintiffs state that their sole objection to Request No. 3 is to the use of the phrase "including the development and modification of such specifications." Their position is that they purchased folding cartons, that the prices of the purchased cartons had been fixed in violation of the antitrust laws, and that they were damaged to the extent of the overcharge resulting from the price fix. Without regard to whether the specifications of the folding cartons which were actually purchased are relevant, plaintiffs state that they are willing to produce those specifications. However, plaintiffs contend that how they developed and modified their specifications is irrelevant to this litigation. Moreover, they maintain that production of every document which recorded or referred to the development and modification of specifications over a 15-year period, particularly in light of the complex definitions established by defendants, is unduly burdensome, annoying, and expensive.

---

6. This is not to say that there is only one way to determine whether there was an overcharge. *See, e. g., Armco Steel Corp. v. Adams County, North Dakota*, 376 F.2d 212 (8th Cir. 1967) (damages in a price-fixing case may be established by evidence of pre- and post-conspiracy period prices as contrasted with prices charged during the conspiracy).

7. Although plaintiffs assert that the last sentence of the request constitutes an interrogatory, rather than a request for production, no objection has been interposed to that aspect of the request.

In their reply memorandum, defendants assert that the specifications relate directly to a host of issues in this litigation including ease of entry into the folding carton market, cross-elasticity of supply and demand for packaging products, and, more generally, a buyer's decision to purchase from some supplier but not others and its bargaining power once that decision is made.

■ We believe Request No. 3 sweeps too broadly. It is true that plaintiffs' specifications may have a bearing on the quality, and therefore the price, of particular folding cartons. For example, if plaintiffs ordered folding cartons which were particularly heavy and of a superior quality, their price might be higher than that usually charged. However, information concerning how the plaintiffs developed and modified their specifications is, in our opinion, irrelevant. It does not matter how the plaintiffs arrived at the specifications for the products which they purchased. What matters is that they purchased them and possibly that they may have purchased cartons with different specifications. Accordingly, the words "including the development and modification of such specifications" are stricken from Request No. 3.

Revised Request No. 4 reads as follows:

All documents which record or refer, in whole or in part, to the quality or performance of any folding carton or supplier, including complaints or recommendations made by Plaintiff to a supplier or others, and complaints or recommendations made to plaintiff by its customers, suppliers or others.

Defendants' argument with respect to this request is similar to that made with regard to Request No. 3. Defendants contend that the request is relevant because it seeks information concerning factors which comprise their prices for folding cartons.

Plaintiffs note that defendants have stated that this request, like No. 3, seeks "price and cost" information. (*See* page 2 of defendants' supporting memorandum.) However, plaintiffs argue that Request No. 4, like No. 3, seeks far more than "price and

cost" information. They object to producing documents which reflect complaints about the quality or performance of the cartons. They state that if the defendants are, in fact, seeking information relating to prices or cost, they have no objection to responding and will do so.

Plaintiffs argue, however, that if they must comply with the request as it literally reads, they will be required "to search for and produce documents which refer, in whole or in part, to a complaint by a retail customer that a particular carton leaked or broke, that the contents of a particular carton were broken, that a particular carton contained too few cookies, pretzels, or other products, or that a particular carton did not prevent pizza from becoming soggy." They contend that such information is not within the subject matter of this litigation or the proper scope of discovery. They assert that this is not a suit for breach of contract based upon allegations that one or more folding cartons was of inferior quality or performed improperly. Finally, plaintiffs submit that compliance would be unduly burdensome, oppressive, and expensive.

In their reply memorandum, defendants argue that price does not exist in a vacuum and that it reflects the market's determination of the value of the goods. They assert that the value of goods, and therefore the price of them, is affected by the quality and the nature of the goods as reflected in the opinion of purchasers. Defendants submit that product quality relates directly to this litigation.

■ We disagree in part with both plaintiffs and defendants. On the one hand, as plaintiffs note, defendants appear to be seeking more than price and cost information. On the other hand, defendants may be entitled to this other information to assist their defense. We see the problem as one of scope and conclude that the defendants' request is overbroad.

Unless we have misread the defendants' position, they are of the opinion that if plaintiffs give them a number of documents which contain complaints about folding car-

tons, such documents will support a theory that the price of folding cartons rose in response to demands to improve their quality rather than because of a conspiracy to fix prices. If this is defendants' theory, we would have thought that the defendants would have devised a more relevant, direct, and efficient way to support it, such as going through their own files to procure complaints. Indeed, we presume that defendants have done so.

We agree that plaintiffs should be required to produce complaints or recommendations which *they* actually made to defendants. Conceivably, the price of folding cartons rose in response to such complaints. However, we see no purpose in plaintiffs producing each and every complaint filed with them over the last fifteen years. If a plaintiff did not deem a complaint or complaints serious enough to forward to its carton supplier, there is no way a defendant would be moved to upgrade the cartons in question. Accordingly, we find that Request No. 4, insofar as it seeks production of documents reflecting complaints or recommendations made by a plaintiff to a defendant is appropriate, but to the extent that it seeks production of documents reflecting complaints or recommendations made to the plaintiffs, it is overbroad, unrelated to the subject matter of the litigation, and unduly burdensome.

■ Revised Request No. 16 reads as follows:

A copy of Plaintiff's annual reports, balance sheets, profit and loss statements and intra-company annual financial reports or Plaintiff's operations utilizing folding cartons.

Defendants contend that this information is essential with respect to the issues of impact and damages. They assert that, upon *any* damage theory presented to this court, the financial documents are relevant and necessary for use by defendants' experts and economists.

Defendants further argue that courts have consistently required production of this type of basic financial information when questions of confidentiality and trade secrets have not been raised, citing *Trans World Airlines, Inc. v. Hughes*, 29 F.R.D. 523 (S.D.N.Y.1961), and *Rockaway Pix Theatre, Inc. v. Metro-Goldwyn-Mayer, Inc.*, 36 F.R.D. 15 (E.D.N.Y.1964). As plaintiffs have not objected on these grounds, defendants maintain that production of the documents relating to basic financial information must be allowed. Finally, defendants note that plaintiffs have requested the same information from them.

Plaintiffs assert that it is inconceivable how this information, when viewed in the context of the claims involved in this litigation, can be relevant. They state that the complaints demonstrate that their damage claim is limited to the amount by which they were overcharged in their purchases of folding cartons due to the alleged conspiracy. Consequently, plaintiffs contend that documents relating to their profits and losses and other financial information are irrelevant both to the defendants' liability and the damages plaintiffs have suffered.

Plaintiffs concede that the requested discovery might be appropriate if they were seeking damages based upon the depreciation of the value of their businesses or upon injury to their business reputations or good will. They submit that this is not such a case and that the cases relied upon by defendants are not controlling here.

Plaintiffs state that the only possible objective of the request would be to demonstrate how, if at all, they either absorbed or "passed on" the illegal overcharge imposed by the defendants. They contend, however, that the request flies directly in the face of the Supreme Court's proscription in *Illinois Brick*. Plaintiffs suggest that it would be appropriate for the court to enter an order with respect to revised Request No. 16 directing only those plaintiffs, if any, whose damage claim is based upon something other than the amount of the overcharge to produce these documents.

In their reply memorandum, defendants reiterate their arguments and state that "[n]othing reveals the weakness of plaintiffs' objections so clearly as the straw man

argument that the information defendants seek could only be relevant to a 'pass-on' defense purportedly rejected in *Illinois Brick*."

We believe that plaintiffs should produce the financial information requested. "[D]iscovery is to be considered relevant where there is *any possibility* that the information sought may be relevant to the subject matter of the action." *United States v. International Business Machines Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y.1974). (emphasis in original). The materials sought here may be relevant to the subject matter of the litigation. While some plaintiffs now seek damages based only on alleged overcharges, it is certainly possible that some or all may seek damages predicated on alleged injury to their competitive position or business. Discovery as to any permissible theory of damages is appropriate. Further, defendants are correct that courts have required production of financial information by both plaintiffs and defendants.

For the reasons stated, and pursuant to the guidelines herein articulated, it is therefore ordered that defendants' motion to compel production of documents in response to their Revised Joint Rule 34 Request is granted as modified herein.