ALUMINUM COMPANY OF
AMERICA, Petitioner,

v.

UNITED STATES DEPARTMENT OF
JUSTICE, ANTITRUST DIVISION, and
John H. Shenefield, Acting Assistant
Attorney General, Respondents.

Civ. A. No. 77–1336.

United States District Court,
District of Columbia.

Jan. 18, 1978.

Lionel Kestenbaum, Bergson, Borkland, Margolis & Adler, Washington, D. C., for petitioner.

John W. Poole, Jr., Atty., Antitrust Division, U. S. Dept. of Justice, Washington, D. C., for respondents.

## MEMORANDUM

GASCH, District Judge.

This action involves a petition by Aluminum Company of America (Alcoa) for an order modifying a Civil Investigative Demand (CID) served on Alcoa by the Antitrust Division of the Department of Justice (Department). Alcoa seeks provisions protecting the confidentiality of its business records and data. The Department contends that such a protective order is precluded by the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C.A. §§ 1311–1314 (Supp. 1977) (1976 Amendments), which amended the Antitrust Civil Process Act, 15 U.S.C. §§ 1311–1314 (1970). Moreover, the Department claims that the terms proposed by Alcoa would frustrate the purpose of the 1976 Amendments by creating inflexibility and obstacles to investigations, destroying the intended anonymity of third party deponents, and prematurely revealing investigative leads.

Jurisdiction is premised upon section 1314(b) of Title 15, which provides that a petition for an order modifying or setting aside a demand be filed in the district court. The instant petition is timely, as petitioner sought and obtained an extension from attorneys in the Department and filed the petition within this time period. *See* 15 U.S.C.A. § 1314(b) (Supp. 1977).

## BACKGROUND

On October 31, 1975, Alcoa and fourteen other producers of primary aluminum and other aluminum products were served with Civil Investigative Demands (CIDs) issued pursuant to the Antitrust Civil Process Act, 15 U.S.C. §§ 1311–1314 (1970). The CIDs, which required production of documents relating to the pricing and production of aluminum products, were part of an Antitrust Division investigation to determine whether decisions in late 1974 and 1975 by various aluminum producers to curtail production, rather than reduce prices, of primary aluminum and some fabricated aluminum products resulted from an agreement or agreements to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (Supp. V 1975). The CID (No. 1664) sought production of documents pertaining to the pricing, marketing, and production of aluminum and aluminum products.

In response, Alcoa submitted hundreds of thousands of documents relating to its costs and financial, marketing, pricing, and research and development plans and policies from which the Department selected more than 160,000 pages. Many of the documents selected and copied by the Department contained highly sensitive financial and business data. At the time these documents were produced, however, the governing statute absolutely prohibited disclosure of the documents or their contents in the course of an antitrust investigation (without the consent of the person who produced the documents) except to a "duly authorized officer, member, or employee of the Department of Justice." Antitrust Civil Process Act § 4(c), 15 U.S.C. § 1313(c) (1970).

The Hart-Scott-Rodino Antitrust Improvements Act of 1976, which amended in part the Antitrust Civil Process Act, was enacted on September 30, 1976. The 1976 Amendments expanded the investigatory powers of the Department by authorizing, *inter alia*, the power to compel oral testimony of any person in the course of an antitrust investigation and the use of documents produced pursuant to a Civil Investigative Demand "in connection with the taking of oral testimony." 15 U.S.C.A. § 1313(c)(2) (Supp. 1977).

On June 10, 1977, the Department issued, pursuant to the 1976 Amendments, Civil

Investigative Demand No. 1844, which requested the documents produced under the earlier CID. The underlying purpose of the second CID was to subject the documents to the procedures authorized under the 1976 Amendments. *See* Letter from John W. Poole, Jr. to Daniel H. Margolis (June 10, 1977).

Alcoa proposed that the Department agree to protect the confidentiality of documents produced in response to the first CID. Alcoa suggested that the Department provide notice to Alcoa and an opportunity to object in advance of any intended disclosure of the documents to third parties. The Department, in refusing to agree to such restrictions, maintained that it could unilaterally decide whether to disclose the documents to third parties during the course of an investigation. It stated:

> We do not believe it would be consistent with our enforcement responsibilities or with the Hart-Scott-Rodino Act for us to accept restrictions on the use of CID documents beyond the substantial restraints imposed by that Act or to agree to furnish notice to your company before making the uses of CID documents contemplated therein. We can assure you that we would reveal the documents, or the contents, to third parties only when it was deemed necessary for law enforcement purposes and we would carefully consider the nature of the document and the possible effect on your company and on competition before deciding whether to use a document in such manner.

Letter from Angela L. Hughes to Daniel H. Margolis (July 18, 1977).

Consequently, Alcoa specifically requested this Court to enter an order with the following provisions:

> 1. To require the Department of Justice, thirty days in advance of any proposed disclosure, to inform Alcoa of any Alcoa document, or the contents thereof, which the Department proposes to disclose to any third person, and the identity of each such third person;
>
> 2. To permit Alcoa twenty days to notify the Department if such documents

are or contain confidential matter, and to object to their disclosure;

> 3. To order the Department of Justice not to disclose to any third person any document or information which Alcoa designates as confidential matter without prior authorization from the Court after notice of hearing; and
>
> 4. For such other and further relief as this Court may deem appropriate.

Petition of Aluminum Company of America for Order Modifying Civil Investigative Demand to Include Protective Provisions at 6.

## MERITS

1. *Authority of the Court to Issue a Protective Order.*

The first issue before the Court is whether the Hart-Scott-Rodino Antitrust Improvements Act of 1976 precludes the entry of an order restricting disclosure to third parties of documents produced in response to a CID. In order to make this determination, the Court must examine several of the provisions as well as the purposes of the 1976 Amendments to the Antitrust Civil Process Act.

The statute in effect at the time the first CID was sent and the documents were produced absolutely prohibited disclosure to third parties:

> The custodian to whom any documentary material is so delivered shall take physical possession thereof, and shall be responsible for the use made thereof . . . While in the possession of the custodian, no material so produced shall be available for examination, without the consent of the person who produced such material, by any individual other than a duly authorized officer, member, or employee of the Department of Justice. * * *

Antitrust Civil Process Act § 4(c), 15 U.S.C. § 1313(c) (1970). In contrast, the 1976 Amendments generally prohibit disclosure to third parties, but this general prohibition is subject to specific exceptions:

> Except as otherwise provided in this section, while in the possession of the custodian, no documentary material, answers to interrogatories, or transcripts or oral

testimony, or copies thereof, so produced shall be available for examination, without the consent of the person who produced such material, answers, or transcripts, by any individual other than a duly authorized official or employee of the Department of Justice.

15 U.S.C.A. § 1313(c)(3) (Supp. 1977). The specific exception relevant to this proceeding provides:

Notwithstanding paragraph (3) of this subsection, such material, answers, and transcripts may be used by any such official or employee in connection with the taking of oral testimony pursuant to this chapter.

15 U.S.C.A. § 1313(c)(2) (Supp. 1977).

Indeed, the ultimate purpose of the 1976 Amendments was to "increase the effectiveness of antitrust investigations." H.R. Rep. No. 94–1343, 94th Cong., 2nd Sess. 12 (1976), U.S. Code Cong. & Admin. News 1976, pp. 2572, 2606; see S. Rep. No. 94–803, 94th Cong., 2nd Sess. 10 (1976). In order to achieve this result, Congress expanded the investigatory powers of the Division by, among other things, authorizing the Division to issue CIDs for answers to written interrogatories and oral testimony, send CIDs to neutral persons and non-target third parties, as well as use CID material in connection with an investigative deposition. *See* H.R. Rep., *supra,* at 2.

However, concomitant with the additional investigatory powers given to the Antitrust Division, Congress provided greater protection for CID recipients. *See* H.R. Rep., *supra,* at 3, 12. In contrast to the Antitrust Civil Process Act of 1962, which incorporated only the "grand jury subpoena" standard as a basis for objections to CIDs, the present act sets forth two standards:

No such demand shall require the production of any documentary material, the submission of any answers to written interrogatories, or the giving of any oral testimony, if such material, answers, or testimony would be protected from disclosure under—

(1) the standards applicable to subpenas or subpenas duces tecum issued by a court of the United States in aid of a grand jury investigation, or

(2) the standards applicable to discovery requests under the Federal Rules of Civil Procedure, to the extent that the application of such standards to any such demand is appropriate and consistent with the provisions and purposes of this chapter.

15 U.S.C.A. § 1312(c) (Supp. 1977).

Plaintiff contends that section 1312(c)(2), the protective provision encompassing the civil discovery standard, provides the Court with authority to issue a protective order. The Department, however, argues that the provision is inapplicable to section 1313(c)(2), which authorizes the Department to disclose documents to third parties in connection with the taking of a deposition under the Act. It contends that the application of the civil discovery standard and the issuance of a protective order in the instant case would directly contradict section 1313(c)(2) and would be inconsistent with the purposes of the Act. It further claims that a protective order would contravene the "unrestricted grant of authority to use CID material in connection with the taking of oral depositions." Memorandum of United States in Response to Petition of Aluminum Company of America for Order Modifying Civil Investigative Demand No. 1844, at 9. Finally, it contends that Congress recognized that, in the context of third party depositions, any restriction on disclosure would frustrate the thrust of the amendments: When Congress intended that CID material should be protected from certain types of disclosure, it explicitly so provided. In sum, the Department, insisting that it has the sole discretion to determine whether to use CID documents in investigative depositions, contends that a protective order is precluded by section 1313(c)(2) and would undermine the purposes of the 1976 Amendments.

■ Upon consideration of the relevant provisions, statutory framework, and legis-

lative history, it appears that the interpretation of the Department is incorrect. While the overriding purpose of the 1976 Amendments, as defendant contends, is to increase the effectiveness of antitrust investigations, Congress also intended to increase the protection available to CID recipients. *See* H.R. Rep., *supra*, at 12. In view of both of these goals, it is reasonable to construe the section 1312(c)(2) civil discovery principles to be applicable to section 1313(c)(2). As the House Report stated, the purpose of applying the rules is to balance the need for effective law enforcement "against the rights of businesses and individuals to be free from unwarranted and unreasonable government intrusion." H.R. Rep., *supra*, at 7–8, U.S. Code Cong. & Admin. News 1976, p. 2602.

First, no provision in the 1976 Amendments explicitly or implicitly precludes the application of the discovery standard to the provision dealing with disclosure to third parties. The inference that no limitations may be placed on the Department's discretion to determine whether to disclose CID material to third parties during investigative depositions may not be drawn simply from the fact that the provision authorizing use of CID material in connection with investigative depositions is itself unrestricted.

Second, the Department's argument that the instant case would not be "consistent with the provisions and purposes of [the Act]" within the meaning of section 1312(c)(2) is unpersuasive. This qualification does not mean, as the Department contends, that any attempt to limit the Department's ability or opportunity to disclose materials to third party deponents is inconsistent with the provisions of the Act.[1] Instead, the qualification pertains to the fact that the Federal Rules may be applied differently (or may be relevant) to civil investigations than to adjudications, because of the different nature of adjudications and investigations. *See* H.R. Rep., *supra*, at

10–13. Indeed, the application of Rule 26(c) principles to a decision to disclose documents to third parties in connection with investigatory depositions would be consistent with one of the objectives of the 1976 Amendments to increase protection to CID recipients. *See* H.R. Rep., *supra*, at 3, 12.

Thus, the Court concludes that it is within the Court's power to issue a protective order to limit disclosure of confidential information obtained by the Department through the production of documents in response to a CID. The Department's position that such an order is absolutely precluded by the 1976 Amendments lacks merit. A protective order is not inconsistent with either section 1313(c)(2) or the purposes of the 1976 Amendments but rather is consistent with the Congressional intent to increase protection of CID recipients.

2. *Appropriateness of a Protective Order.*

In order to determine whether a protective order is warranted in the instant case and the specific terms of such an order, the Court must apply the standards set forth in section 1312(c)(2) of the 1976 Amendments, which provides the Court with authority to issue a protective order. Section 1312(c)(2) incorporates "the standards applicable to discovery requests under the Federal Rules of Civil Procedure, to the extent that the application of such standards to any such demand is appropriate and consistent with the provisions and purposes of this chapter." Under the Federal Rules of Civil Procedure, the decision to issue a protective order is within the sound discretion of the Court. *See, e.g., Dolgow v. Anderson*, 53 F.R.D. 661, 664 (E.D.N.Y.1971); *Essex Wire Corp. v. Eastern Electric Sales Co.*, 48 F.R.D. 308, 310 (E.D.Pa.1969).

More specifically, one of the eight types of protective orders listed in Fed.R.Civ.P. 26(c)(7) pertains to the nondisclosure of trade secrets or confidential information. Rule 26(c)(7) provides:

---

1. In fact, the House Report, in discussing the precedents under the Federal Rules of Civil Procedure, specifically notes that "[t]rade secrets may be obtained, but protective orders

are available to guard against their prejudicial disclosure in any subsequent proceedings." *See* H.R. Rep., *supra*, at 10, U.S. Code Cong. & Admin. News 1976, p. 2604.

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way . . . .

It is well established that a court has broad discretion under Rule 26(c)(7) in determining both whether a protective order is warranted and the specific restrictions to be imposed. *See* C. Wright and A. Miller, 8 *Federal Practice and Procedure*, § 2043, at 305 (1970).

■ In light of the facts in this case, the Court concludes that a protective order is warranted. The Court takes cognizance of the fact that when the documents were initially produced pursuant to the first CID under the Antitrust Civil Process Act, the Department was prohibited by statute from disclosing the documents to third parties without the consent of the CID recipient. Alcoa produced hundreds of thousands of documents, many of which contain highly sensitive and confidential information, allegedly without screening for confidentiality, in reliance upon the statutory prohibition against disclosure to third parties. The Department confirmed this view in response to a request from Alcoa's counsel for a stipulation of confidentiality.

. . . [T]he confidentiality provisions of the Antitrust Civil Process Act are strict, and we believe, adequate to protect respondents in the vast majority of cases. You may be assured, for instance, that no material produced by Alcoa would be furnished for examination to anyone other than a duly authorized officer, member or

employee of the Justice Department without the consent of Alcoa or an order of the Court as to which Alcoa would have prior notice.

Letter from John W. Poole, Jr. to Daniel H. Margolis (Jan. 22, 1976). Thus, Alcoa released numerous documents (now in the possession of the Department) containing confidential information without a meaningful opportunity to object to possible disclosure to third parties, and on the specific assurance that there would be no disclosure to anyone not employed by the Department without Alcoa's consent.

3. *Terms of the Protective Order.*

■ Having determined that a protective order is warranted in the instant case, the Court will now set forth appropriate guidelines. As a preliminary matter, Alcoa should preselect those categories of documents which it considers to contain confidential information and which it seeks to protect from disclosure to third parties. Alcoa should designate time and subject matter limitations with as much specificity as possible; the Court will look with disfavor upon unnecessarily broad designations.

If the Department intends to disclose any preselected documents to third parties during the course of an investigative deposition, it will be required to notify Alcoa twenty-five days prior to the proposed disclosure.[2] At the same time, the Department must indicate the classification (*e.g.*, competitor or customer) of the third party to whom it intends to disclose the confidential information. Within five days of the Department's notice of intended disclosure, Alcoa must inform the Department if it objects to the disclosure of the material. The Department must then decide, within five days of Alcoa's notification of objection to disclosure, whether or not it still intends to disclose the material. If the Depart-

---

2. Similarly, the United States Court of Appeals for the District of Columbia Circuit has required the FTC to provide parties with ten days advance notice of the intention to disclose documents produced pursuant to a *subpoena duces tecum. See FTC v. Texaco, Inc.*, 555 F.2d 862, 884 (D.C.Cir.1977).

ment, after considering Alcoa's objection,[3] still intends to disclose the material, Alcoa may challenge the Department's decision by filing the matter with this Court within five days of the date of the Department's decision to pursue disclosure. The burden will be upon Alcoa to demonstrate to the Court the confidential nature of the documents and the irreparable competitive injury that would arise as a result.

The Court has set forth these guidelines in order to provide an orderly mechanism by which the parties can resolve the dispute prior to the intended date of disclosure. The parties may, if they desire, agree to more specific details. Finally, if for good cause shown, the Department is unable to inform Alcoa that it intends to disclose certain documents to third parties within twenty-five days of the date of the intended disclosure, the Department must submit, at the earliest possible date, a late or supplemental notification to Alcoa.

---

3. These guidelines are consistent with *FCC v. Schreiber,* 381 U.S. 279, 290–91, 296–97, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965), which establishes that an agency should have the initial opportunity to consider the dispute over confidentiality before a protective order may be issued by the Court.