**In re NASDAQ MARKET–MAKERS ANTITRUST LITIGATION.**

**M.D.L. No. 1023.**

**94 Civ. 3996 (RWS).**

United States District Court,
S.D. New York.

June 6, 1996.

---

Fine Kaplan and Black, Philadelphia, PA (Arthur M. Kaplan, of counsel), Lovell & Skirnick, L.L.P., New York City (Christopher Lovell, of counsel), Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA (Leonard B. Simon, of counsel), for Plaintiffs.

Shearman & Sterling, New York City (Joseph T. McLaughlin, James T. Halverson, of counsel), Liaison Counsel for Defendants and Defendant Herzog, Heine, Geduld, Inc.

Sullivan & Cromwell, New York City (John L. Warden, Michael Lacovara, of counsel), for Defendant Goldman, Sachs & Co.

## OPINION

SWEET, District Judge.

This opinion sets out the reasoning underlying this Court's Joint Pretrial Order Number 3 (the "Pretrial Order"), dated March 18, 1996, which ordered, *inter alia,* that the plaintiffs in this consolidated proposed class action be given access to certain materials related to Civil Investigative Demands ("CIDs") made of the defendants by the Antitrust Division of the United States Department of Justice (the "DOJ", the "Department", or the "Justice Department").

### Background

The background of this matter is set out in detail in this Court's previous opinions in this action, *In re NASDAQ Market–Makers Antitrust Litig.,* 1996 WL 187409, 94 Civ. 3996 (RWS) (S.D.N.Y. Apr. 18, 1996); *In re NASDAQ Market–Makers Antitrust Litig.,* 164 F.R.D. 346 (S.D.N.Y.1996); *In re Nasdaq Market–Makers Antitrust Litig.,* 894 F.Supp. 703 (S.D.N.Y.1995), familiarity with which is assumed.

In May 1994, Plaintiffs filed their complaint in this action, alleging the price fixing of spreads of stocks traded on the NASDAQ exchange. The Judicial Panel on Multidistrict Litigation consolidated the litigation before this Court, and Plaintiffs thereafter served consolidated document requests and interrogatories on all Defendants.

In October 1994, the Justice Department announced its own investigation of the NASD, in the course of which it served CIDs requesting the production of documents, answers to interrogatories, and deposition testimony.

On December 6, 1995, Plaintiffs moved for an order, pursuant to Federal Rule of Civil Procedure 37(a) to compel Defendants to produce, to the extent responsive by subject matter to their consolidated discovery requests, CID interrogatories, documents reflecting agreements modifying the CIDs, answers to the CID interrogatories, CID deposition transcripts, and CID financial discovery; and to modify the Stipulated Order Regarding Confidential Documents (the "Confidentiality Order") to permit Plaintiffs to confer with the DOJ regarding Defendants' compliance with Court orders regarding CID discovery.

On December 20, 1995, Defendants filed their Notice of Motion pursuant to Rule 37 to compel discovery and for a scheduling order. Oral arguments on both Plaintiffs' and Defendants' motions were heard on January 17, 1996.

Plaintiffs' and Defendants' motions were resolved by Joint Proposed Pretrial Order No. 3 (the "Pretrial Order"), prepared jointly by the parties and ordered by this Court on March 7, 1996. The Pretrial Order reflected, in part, statements issued by the Court at a pretrial conference held on February 7, 1996 (the "Pretrial Conference"). It read in part:

6. On February 28, 1996, each defendant will identify those of its current employees or former employees who were deposed by the DOJ in connection with the Nasdaq investigation, to the extent known to that defendant.

7. By March 7, 1996, each defendant shall produce copies of all materials, not previously produced pursuant to the Stipulated Order, that were given to the Department of Justice, Antitrust Division, pursuant to Civil Investigative Demands as described in the Stipulated Order, setting forth revenues, costs, profit and/or losses derived from trading Nasdaq securities.

.   .   .   .   .

10. By March 20, 1996, defendants shall produce copies of all interrogatory answers that were given to the Department

of Justice, Antitrust Division, pursuant to Civil Investigative Demands as described in the Stipulated Order, to the extent such answers related to the operation and structure of the Nasdaq Stock Market. Defendants shall also produce the interrogatories to which answers are being produced pursuant to this paragraph.

The reasoning underlying the Pretrial Order as a whole was stated in open court. This Opinion sets forth the reasoning of the parts of the Pretrial Order, pertaining to the CIDs.

### Discussion

Rule 26 of the Federal Rules of Civil Procedure provides that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action," without regard to whether the material sought will be admissible at trial, "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), Fed.R.Civ.P. As the Supreme Court stated in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), " 'relevant to the subject matter involved in the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* at 351, 98 S.Ct. at 2389.

Because certain of the CID materials sought by Plaintiffs were relevant and not privileged, their production was compelled.

### The CID Materials Are Relevant

■ The Supreme Court has cautioned that the relevancy requirement of Rule 26(b)(1) "should be firmly applied." *Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115 (1979); *see also In re Surety Assoc. of Am.*, 388 F.2d 412, 414 (2d Cir.1967). However, "where the proof is largely in the hands of alleged conspirators," antitrust plaintiffs must be given "ample opportunity" for discovery. *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976); *see, e.g., In re Shopping Carts Antitrust Litig.*, 95 F.R.D. 299 (S.D.N.Y.1982).

■ The requested CID materials could provide additional evidence regarding liability and damages and potential impeachment material and lead to the discovery of other admissible evidence. These include documents setting forth revenues, costs, profits, or losses derived from trading NASDAQ securities; interrogatory answers related to the operation and structure of the NASDAQ market (and the underlying CIDs); and the identities of those of each defendant's current or former employees deposed by the DOJ in connection with the investigation, to the extent known to that defendant. The financial information, in particular, is relevant, in that it may show that common questions predominate for purposes of class certification under Rule 23(b)(3). Indeed, courts have held that financial information can be particularly relevant in price-fixing cases. *See, e.g., In re Wirebound Boxes Antitrust Litig.*, 129 F.R.D. 534, 539 (D.Minn.1990), citing *In re Shopping Carts Antitrust Litig.*, 95 F.R.D. 299, 308 (S.D.N.Y.1982), *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 427 (N.D.Ill.1977).

### The CID Materials Are Not Privileged

■ The Antitrust Civil Process Act ("ACPA"), 15 U.S.C. §§ 1311 *et seq.*, pursuant to which the Justice Department issued its CIDs, does not establish a privilege for the materials held by Defendants. Its language indicates that the restrictions on disclosure are one-sided, providing that: "while in the possession of the custodian, no documentary material, answers to interrogatories, or transcripts of oral testimony, or copies thereof, so produced shall be available for examination, without the consent of the person who produced such material, answers, or transcripts...." 15 U.S.C. § 1313(c)(3).

Indeed, the few cases that have addressed this question have come down squarely in favor of compelling the production of CID materials in the hands of Defendants. Their sound reasoning applies here as well and suggests that the CID materials requested by Plaintiffs are not privileged. In *In re Domestic Air Transp. Antitrust Litigation* ("*Domestic Air II*"), 142 F.R.D. 354 (N.D.Ga.1992), and *In re Domestic Air*

*Transp. Antitrust Litigation ("Domestic Air I "),* 141 F.R.D. 556 (N.D.Ga.1992), the court held that "[t]he [ACPA] provides no protection against release by any other party who has possession of the [CID] document." *Domestic Air II,* 142 F.R.D. at 356. The court thus compelled the defendants to produce the CIDs and the answers to CID interrogatories, since "[o]nly the custodian of the documents is prohibited from disclosing the information to the general public." *Domestic Air I,* 141 F.R.D. at 560. Similarly, in *In re Air Passenger Computer Reservation Sys. Antitrust Litig.,* 116 F.R.D. 390 (C.D.Cal.1986) (*"Air Passenger "*), the court held that "[n]either the statutory language nor the legislative history supports defendants' view that CID deposition transcripts are not discoverable when held by defendants in civil actions." *Id.* at 393.

Defendants suggested that these courts' interpretation of the ACPA fails to appreciate the balance Congress struck between expanding the DOJ's investigatory powers and encouraging the cooperation of private parties by ensuring the confidentiality of their responses to CIDs and that the protection provided in Section 1313(c)(3) becomes meaningless if a third party can circumvent the DOJ and serve a subpoena on a CID recipient. They point to *Alcoa v. United States Dept. of Justice,* 444 F.Supp. 1342 (D.D.C.1978). There, the Court noted that:

> [T]he ultimate purpose of the 1976 Amendments was to "increase the effectiveness of antitrust investigations." In order to achieve this result, Congress expanded the investigatory powers of the Division by, among other things, authorizing the Division to issue CIDs for answers to written interrogatories and oral testimony.... However, concomitant with the additional investigatory powers given to the Antitrust Division, Congress provided greater protection for CID recipients.

*Id.* at 1345 (citations omitted). The court stressed that Alcoa had relied on the legislative promise that the DOJ was prohibited, without Alcoa's consent, from disclosing to third parties materials submitted pursuant to the CIDs. *Id.* at 1347.

Yet neither *Alcoa* nor Defendants' concerns for the confidentiality of CID demands are inconsistent with the reading given to the ACPA in *Domestic Air* and *Air Passenger.* First, of course, cooperation with CID demands is required by law, and the balance of incentives is thus relatively unconvincing. More importantly, to deem CID materials not privileged is not tantamount to mandating the disclosure of all CID materials; it merely permits their discovery where they would be otherwise discoverable. Combining Section 1313(c)(3) with the Federal Rules of Civil Procedure on discovery strikes such a balance. Defendants are protected from having their CID-related materials disclosed to anyone by the DOJ, and no one except a party who has brought an action against a subject of a CID and has demonstrated a need for access to a court can glean the information from the Defendants.

Further, CIDs share many attributes of ordinary civil discovery, including the right to have counsel present during depositions and the absolute right of the deponent to inspect the deposition transcript. H.R. No. 94–1343 at 2609. As is the case in civil discovery, CID respondents can object in court to all or part of the CID. ACPA § 1314(b), (c). Indeed, the ACPA provides that the Federal Rules of Civil Procedure govern CID proceedings, except to the extend inconsistent with the Act. 15 U.S.C. § 1314(f). Most importantly, the ACPA contains no limitation on obtaining CID materials or the CIDs themselves, directly from the producing party.

The Courts have rejected arguments that a showing of "particularized need" is necessary to gain access to CID transcripts, as it is for grand jury transcripts. *See Air Passenger,* 116 F.R.D. at 393; *Domestic Air II,* 142 F.R.D. at 356. Both the *Air Passenger* and *Domestic Air* courts found that Congress had expressly envisioned CID materials being made available in private antitrust litigation. As the *Domestic Air* court stated:

> Congress did not provide that the transcripts would not be available in subsequent litigation. In fact, Congress recognized that information obtained during a CID investigation might well be dis-

**727**

closed.... While Congress could have created such a privilege, it did not do so. *Id.,* 142 F.R.D. at 355, quoting *Air Passenger,* 116 F.R.D. at 393.

As to *Alcoa,* that case dealt with disclosure by the DOJ discovery from defendants. Here, Plaintiffs' discovery requests are directed solely to Defendants. Also, the *Alcoa* court did not prohibit the DOJ from disclosing to third parties confidential documents that Alcoa had produced in response to CIDs. Instead, it merely required the DOJ to give Alcoa notice of its intended disclosure. Alcoa was held to bear the burden of demonstrating the "confidential nature of the documents and the irreparable competitive injury that would arise as a result" of disclosure and was given five days to object. *Alcoa,* 444 F.Supp. at 1347–48. If the DOJ disagreed, only then might Alcoa seek a protective order. *Id.*

Defendants argued further that compelling production of the CID interrogatories and answers would distort the nature and purpose of the CID by making it into a private discovery device. They noted that Section 1312(a) permits the government to issue a CID solely for the limited purpose of determining whether a governmental proceeding is warranted, and that once it commences such a proceeding, the DOJ loses its CID authority. Defendants relied on *United States v. Witmer,* 835 F.Supp. 208, 217 (M.D.Pa.1993), *aff'd,* 30 F.3d 1489 (3d Cir. 1994), for the proposition that the use of CID for discovery purposes, even by the United States itself, is prohibited. However, *Witmer,* which dealt with the DOJ's authority to issue a CID under the False Claims Act, did not prohibit the Department from using CIDs for discovery purposes. The court merely agreed that using the CIDs for a purpose other than to determine if there is sufficient evidence to file suit would be improper." *Id.* at 219.

Defendants cited *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.,* 26 Fed. R.Serv.2d 793 (E.D.Pa.1978), for the proposition that attempts by plaintiffs to obtain documents relating to a government investigation are improper. *Zenith,* however, is inapposite. There, Zenith served a subpoena on a non-party, whose confidential documents would not have been protected by any confidentiality order. Here, the NASDAQ Defendants are parties and Plaintiffs have signed a confidentiality stipulation. Second, there Zenith's subpoena called for documents covered by the work-product privilege. Moreover, *Zenith* did not grant the defendant's motion to quash the subpoena; rather, it merely granted defendant's "motion to quash the subpoena as to all documents other than its own non-confidential documents not subject to the claim of privilege." *Id.* at 794–95.

### Conclusion

The foregoing analysis supplements the statements made in open court and demonstrates that the CID-related documents ordered to be produced by Pretrial Order Number 3 were relevant and not privileged.

It is so ordered.