**In re DOMESTIC AIR TRANSPORTA-TION ANTITRUST LITIGATION.**

**This Document Relates To:**
**ALL ACTIONS.**

**Master File No. 1:90–CV–2485–MHS.**
**MDL No. 861.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 7, 1992.

See also 141 F.R.D. 534.

Mark R. Cuker, Jay S. Cohen and John Philip McCarthy, Philadelphia, Pa., for Robert and Maureen Bernstein, et al.

Edwin C. Schreiber, Keltner & Schreiber, Inc., Los Angeles, Cal.; and J. Garrett Ken-

drick, Long Beach, Cal., for Lee Reinke Bright and Kenneth L. King.

James A. Calhoun, Calhoun, Benzin, Kademos & Heichel, Mansfield, Ohio, for Michael Carey, et al.

Joel C. Meredith, Steven J. Greenfogel, and Daniel B. Allanoff, Meredith & Cohen, Philadelphia, Pa., for Michael L. Coben.

Allen D. Black, Fine, Kaplan and Black, Philadelphia, Pa.; and Michael P. Malakoff, Berger, Kapetan, Malakoff & Meyers, Pittsburgh, Pa., for Nancy A. Colbaugh, et al.

Jori Bloom Naegele, Thomas R. Theado and Robert D. Gary, Gary, Naegele & Theado, Lorain, Ohio, for Bernard M. Davidson.

Kenneth A. Jacobsen and Richard D. Greenfield, Greenfield & Chimicles, Haverford, Pa., for John Paul Decker, et al.

Frances M. Visco, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for Lee Dushoff, et al.

Richard S. Wayne, Mark A. Ogle, Strauss & Troy, Cincinnati, Ohio; and Dianne M. Nast, Kohn, Savett, Klein & Graf, Philadelphia, Pa., for H. Bradley Eden, et al.

Jerry S. Cohen and Michael D. Hausfeld, Cohen, Milstein, Hausfeld & Toll, Washington, D.C., for Charles Leonard Egan, et al.

Robert A. Skirnick, Wechsler, Skirnick, Harwood, Halebran & Feffer, New York City, for Kenneth A. Elan.

Lynn Lincoln Sarko and Keller Rohrback, Seattle, Wash., for Lisa Fitzpatrick, et al. and Peter D. Joers, II.

William E. Haggerty, Morgan, Hallgren, Crosswell & Kane, Lancaster, Pa., for Diane Gitman, et al.

W. Pitts Carr, Carr, Tabb & Pope, Atlanta, Ga., for Mark E. Goldberg, et al.

Leonard Barrack, Barrack, Rodos & Bacine, Philadelphia, Pa., for Dennis T. Gorchov, et al.

Steven M. Kramer, New York City, for Gregory Gordon, et al.

Arnold Levin, Levin, Fishbein, Sedran & Berman, Philadelphia, Pa., for Sheldon Gross, et al.

Joseph Goldberg, Carpenter and Goldberg, Albuquerque, N.M.; and James S. Bailey, Jr., Calkins, Kramer, Grimshaw & Harring, Denver, Colo., for Kathleen Guthrie, et al.

Louis M. Tarasi, Jr., Tarasi & Johnson, Pittsburgh, Pa.; and David Berger, Berger & Montague, Philadelphia, Pa., for Charles Henry, et al.

Frederick D. Steinhardt, Mason, Steinhardt, Jacobs & Perlman, Southfield, Mich., for John E. Jacobs.

Harvey Greenfield, New York City, for Harold Kahn.

Mario N. Alioto, Trump Oliveira & Alioto, San Francisco, Cal., for Kenneth L. King.

Mark J. McCarriston, Philadelphia, Pa., for Dee Lim, M.D.

Robert M. Roseman, Rudolph, Seidner, Goldman, Rochestie & Salmon; and Eugene A. Specter, Philadelphia, Pa., for William Lutz, et al.

David J. Berman, Berman, Berkley & Lasky, San Francisco, Cal., for Heather Louise Martinez, et al.

W. Pitts Carr, Carr, Tabb & Pope, Atlanta, Ga., for Alfred D. Mathewson, et al.

Harold Berger and H. Laddie Montague, Jr., Berger & Montague, Philadelphia, Pa., for Edward P. Marion, et al.

Francis O. Scarpulla and Guido Saveri, Saveri & Saveri, San Francisco, Cal., for John W. Morse, et al.

Dianne M. Nast, Kohn, Savett, Klein & Graf, Philadelphia, Pa., for Thomas P. O'Donnell, et al.

Warren Rubin and Bernard M. Gross, Gross & Metzger, Philadelphia, Pa., for S. Robert Polis, et al.

John A. Cochrane, Cochrane & Breshnahan, St. Paul, Minn., for Claudia Rybak.

Steven M. Kramer, New York City, for Sandra Sandine, et al.

Eugene A. Spector, Philadelphia, Pa., for Issac Stein, et al.

Judah I. Labovitz, Cohen, Shapiro, Polisher, Shiekman & Cohen, Lawrenceville, N.J., for Irv Susson.

Hartley B. Martyn, Cleveland, Ohio, for Audray Wiesen, et al.

William Q. Bird, Steven R. Wisebraum, Atlanta, Ga.; and Marc M. Seltzer, and Gretchen M. Nelson, Corinblit & Seltzer, Los Angeles, Cal., for William J. Winslade, et al.

Vance K. Opperman, Richard A. Lockridge, Opperman, Heins & Paquin; and Andrew C. McIntosh, Minneapolis, Minn., for James P. Young, et al.

W. Pitts Carr, Carr, Tabb & Pope, Atlanta, Ga., for Timothy W. Wolfe, et al. and W. Douglas Langmack, et al.

Alfred G. Yates, Jr. and Nita M. Fandray, Yates and Associates, Pittsburgh, Pa., for Charles Young.

James A. Treanor, III, Dow, Lohnes & Albertson, Washington, D.C.; Peter Crane Canfield, Terrence B. Adamson, Dow, Lohnes & Albertson, Atlanta, Ga.; and Mark Leddy, Cleary, Gottlieb, Steen & Hamilton, Washington, D.C., for Airline Tarriff Pub. Co., Inc.

Irving Scher, Weil, Gotshal & Manges, New York City; Andrew Steinberg, Dallas/Fort Worth Airport, Tex.; and Michael A. Doyle, Alston & Bird, Atlanta, Ga., for American Airlines, Inc.

Donald L. Flexner, Crowell & Moring, Washington, D.C.; and Jefferson D. Kirby, III, Morris, Manning & Martin, Atlanta, Ga., for Continental Airlines, Inc.

Emmet J. Bondurant, II, Bondurant, Mixson & Elmore; and John James Varley, Delta Airlines, Inc., Atlanta, Ga., for Delta Airlines, Inc.

Irwin Goldbloom, Latham & Watkins, Washington, D.C., for Midway Airlines, Inc.

S.M. Litvack, Dewey Ballantine, New York City; and Joseph Lefkoff, Atlanta, Ga., for Northwest Airlines, Inc.

Joseph B.G. Fay, Morgan, Lewis & Bockius, Philadelphia, Pa., for Pan American World Airways, Inc.

Robert H. Rawson, Jr., Jones, Day, Reavis & Pogue, Cleveland, Ohio; and Lee Trammell Newton, Jr., Jones, Day, Reavis & Pogue, Atlanta, Ga., for Trans World Airlines, Inc.

William T. Coleman, Jr., O'Melveny & Myers, Washington, D.C.; and Steve Clay, Kilpatrick & Cody, Atlanta, Ga., for United Airlines, Inc.

Robert C. Heim, Dechert, Proce & Rhoads, Philadelphia, Pa.; and David R. Aufdenspring, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for U.S. Air, Inc.

SHOOB, Senior District Judge.

*Pretrial Order No. 7*

Presently before the Court are several motions to compel filed by plaintiffs against each of the four airline defendants in this action. Several discovery requests are objected to by most or all defendants. Plaintiffs' motions to compel against all defendants with regard to these requests, therefore, will be dealt with concurrently. Other miscellaneous objections by each defendant to various discovery requests will be discussed individually. For the reasons stated briefly below, the Court will grant in part and deny in part plaintiffs' motions to compel.

*I. CID Documents*

All airline defendants have objected to plaintiffs' Document Request No. 37, which seeks:

All documents received from or produced by you to any governmental entity relating to civil investigative demands, grand jury subpoenas, or other document requests in connection with any governmental investigation of pricing in the domestic passenger air transportation industry. Included within this request are any civil investigative demands, grand jury subpoenas and document requests themselves, any correspondence or other documents concerning the scope of the production under such demands, subpoenas and requests, and any indices of the documents requested, gathered or produced as well as any documents produc-

ed to the government in response to any such investigatory request.

Defendants have refused to produce copies of any government civil investigative demand ("CID"), CID interrogatories, and the airlines' answers to such interrogatories. United Airlines, Inc. ("United"), on behalf of all defendants, argues that the "required-reports doctrine" protects the airlines from producing the documents. Plaintiffs argue that the airlines have no privilege under federal law that entitles them to withhold the CID or CID responses.

■ Defendants' reference to the "required-reports" doctrine is based on proposed Rule 502 of the Federal Rules of Evidence.[1] While Congress struck this provision in its adoption of the Federal Rules of Evidence, "[i]t still has considerable utility as a standard." 2 J. Weinstein & M. Berger, Weinstein's Evidence § 502 at p. 502–1 (1990). However, a review of the Advisory Committee's Notes in connection with proposed Rule 502 indicates that the proposed privilege is not all-encompassing. It is intended to apply only in those limited circumstances where a statute explicitly provides for the privilege.

> Statutes which require the making of returns or reports sometimes confer on the reporting party a privilege against disclosure, commonly coupled with a prohibition against disclosure by the officer to whom the report is made.... These statutes, both state and federal, may generally be assumed to embody policies of significant dimensions. Rule 501 insulates the federal provisions against disturbance by these rules; the present rule reiterates a result commonly specified in federal statutes and extends its application to state statutes of similar character.

Accordingly, insofar as a "required-reports" doctrine exists, it confers a privilege

on the reporting party only when specifically authorized by statute.

Title 15 U.S.C. §§ 1312–14 governs CIDs issued in civil antitrust investigations by the United States Department of Justice. The only restriction on the production of documentary material obtained in response to a CID is contained in § 1313(c)(3), which provides:

> while in the possession of the custodian, no documentary material, answers to interrogatories, or transcripts of oral testimony, or copies thereof, so produced shall be available for examination, without the consent of the person who produced such material, answers, or transcripts, and, in the case of any product of discovery produced pursuant to an express demand of such material, of the person from whom the discovery was obtained, by any individual other than a duly authorized official, employee, or agent of the Department of Justice.

There are no other protections or privileges provided by the CID statutes. Only the custodian of the documents is prohibited from disclosing the information to the general public.

Defendants do not dispute that there is no explicit articulation of a privilege in § 1313 but urge the Court to consider not only the statutory language mandating confidential treatment of CID documents, but also the policy underlying the grant of confidentiality. Defendants argue that where the primary policy underlying the confidentiality provision is to encourage complete and candid reporting, the "required-reports" privilege applies not only to the report actually filed, but also to copies in the reporter's possession.

Both the federal and state CID statutes at issue[2] restrict disclosure only by the officer to whom the report is made. There is no mention of copies retained by the reporter. The Court will not extend the privilege in the absence of a specific articu-

---

1. The proposed Rule provides that:

 A person, corporation, association, or other organization or entity, either private or public, making a return or report required by law to be made has a privilege to refuse to disclose and to prevent any other person from

 disclosing the return or report, if the law requiring it to be made so provides.

2. The confidentiality of Florida CIDs and responses is governed by Fla.Stat.Ann. § 542.28(9) (1988).

lation in the governing statute providing for the protection that defendants seek. *See St. Regis Paper Company v. U.S.*, 368 U.S. 208, 218, 82 S.Ct. 289, 295, 7 L.Ed.2d 240 (1961) (no privilege for the reporter where Census Act contained prohibition only against disclosure by officials); *In re Air Passenger Computer Reservation Systems Antitrust Litigation*, 116 F.R.D. 390, 393 (C.D.Cal.1986) ("Defendants bear a heavy burden in attempting to convince the court that there is a privilege in [§ 1313] that Congress did not expressly provide for.") Accordingly, the Court will grant plaintiffs' motion to compel with respect to Document Request No. 37.

## II. Information Concerning Former Employees

■ Defendants Delta Airlines, Inc. ("Delta"), USAIR, Inc. ("USAir"), and American Airlines, Inc. ("American") refuse to provide plaintiffs with the last known addresses, telephone numbers, and social security numbers of any former employees who have been identified in response to other discovery requests. While defendants do not object to providing reasonable identifying information, they do object to any contact by plaintiffs of the former employees on an *ex parte* basis. Defendants suggest that the Court allow either formal discovery or informal interviews of former employees, but require notice to all parties and an opportunity for defense counsel to participate.

Defendants concede that there is "a substantial division of authority regarding the propriety of *ex parte* contacts with former employees of corporate defendants." Defendant American's Response to Plaintiffs' Motion to Compel at 4. Standard 47 of Georgia Standards of Conduct provides:

During the course of his representation of a client, a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the

prior written consent of the lawyer representing such other party or is authorized by law to do so.

Directory Rule 7–104 of the Georgia Canon of Ethics provides the same. The Standard and Rule are substantially identical to Rule 4.2 of the Model Rules of Professional Conduct ("Model Rules"), adopted by the American Bar Association ("ABA") in 1983, and DR 7–104 of the Code of Professional Responsibility.

The ABA, in ABA Formal Opinion 91–359, issued March 22, 1991, concluded that Rule 4.2 does not prohibit communications with former employees of a defendant corporation as long as the former employees are not *in fact* represented by the corporation's attorney.

While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employers, the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding such coverage was intended.... Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.

ABA Opinion 91–359, issued March 22, 1991, Exhibit A to Plaintiffs' Motion to Compel Against Defendant American Airlines, Inc., at 15–16. The Committee found that a blanket prohibition on acquisition of such information would "inhibit the acquisition of information about one's case." *Id.*

The Court finds the opinion and reasoning of the ABA committee persuasive on this matter and will direct defendants to provide the identifying information about former employees requested by plaintiffs.[3]

---

3. The Court will not require defendants to furnish social security numbers of former employees. "[E]mployees have a strong privacy interest in their Social Security numbers." *I.B.E.W.*

*Local Union No. 5 v. Department of Housing and Urban Development*, 852 F.2d 87, 89 (3rd Cir. 1988). Names, last known addresses, and tele-

The Court will not require plaintiffs to notify defendants of their intention to interview former employees, nor will it mandate that plaintiffs allow counsel for defendants to be present during the interview.[4]

■ The Court will require, however, that plaintiffs comply with Model Rule 4.3 as it relates to a lawyer's dealings with unrepresented persons. Accordingly, prior to making any *ex parte* contact with former employees of the defendant airlines, plaintiffs must deliver to the former employee a letter informing her of the nature of the lawyer's role in the matter giving occasion for the contact, including the identity of the lawyer's client and the fact that the witness's former employer is an adverse party. Counsel must also inform the former employee that she has no obligation to talk with plaintiffs' counsel. The Court will not require, as requested by defendants, that the letter include the name, address, and telephone number of the relevant corporate defendant's counsel.

### III. Expense Reports

Plaintiffs' Document Request No. 27 seeks:

> All expense reports, diaries, calendars, appointment books and correspondence files for each of [the airlines'] current or former officers, directors, employees and agents with responsibility for establishing or changing the actual or proposed fares, prices, terms and conditions charged by you for domestic air transportation services.

Defendants Delta, United, and USAir have each objected in some form to plaintiffs' request aimed at securing documents evidencing meetings or communications between officials of defendant airlines.

### A. Delta and USAir

■ Delta and USAir insist that in response to Document Request No. 27, they should be permitted to redact expense reports, diaries, calendars, and appointment books to protect personal information that has nothing to do with the issues in the case. Plaintiffs counter that in the event there were meetings held among defendants regarding the alleged conspiracy, it is very unlikely that the meetings are described as such on defendants' expense reports, diaries, and calendars. For this reason, plaintiffs argue that defendants cannot take it upon themselves to determine which activities of its senior management are relevant and which are not.

The Court acknowledges that the records of senior officials with pricing responsibilities may be an invaluable source of information for plaintiffs concerning the existence of the alleged conspiracy. However, *production in the form urged by plaintiffs* would require the disclosure of clearly irrelevant information, such as automobile expenses, medical expenses, notes of internal personnel meetings, and schedules of inaugural flights and groundbreaking ceremonies. Defendant Delta has outlined an approach which the Court believes balances plaintiffs' need for full disclosure of relevant information with defendants' concerns regarding mass production of irrelevant, personal material.

Delta has offered to respond to plaintiffs' legitimate discovery interests by producing, in redacted form, portions of all expense *reports*, diaries, calendars, and appointment books, evidencing meetings of Delta's senior officers with representatives of any other airlines. The portion that Delta has agreed to produce are all documents relating to (1) air fares; (2) yields, passenger revenues, numbers of revenue passengers, and passenger revenue miles;

---

phone numbers are sufficient identifying information.

**4.** As to defendants' concern that any *ex parte* communication may violate the attorney-client privilege, the Court advises plaintiffs to heed the ABA Committee's caution that

> the potentially-communicating adversary attorney must be careful not to seek to induce the former employee to violate the privilege attaching to attorney-client communications to the extent his or her communications as a former employee with his or her former employer's counsel are protected by the privilege. *Id.* at 16. Inquiry by plaintiffs into such communications would violate Rule 4.4 requiring respect for the rights of third parties.

(3) mergers and acquisitions of airlines or airport facilities; (4) price competition among airlines; (5) market allocation among airlines; (6) market share, percentage of passengers or percentage of enplanements at particular airports; and (7) the airlines hub and spoke systems and the development of those systems. Delta has also offered to describe what information was being redacted from documents so that plaintiffs would have an opportunity to object to the redaction.

The Court will permit defendants to produce documents responsive to Request No. 27 in redacted form as outlined by Delta. In addition to describing the general form of the material redacted, however, defendants must indicate, when known, the names of individuals whose activities are represented in the redacted material and the time period the material covers. If plaintiffs feel that the redacted material is discoverable, they must submit their request and the Court will review the redacted material *in camera*. The Court will not hesitate to award fees and costs to the parties prevailing in a dispute over redacted material.

### B. United

■ United has agreed to provide documents responsive to Request No. 27 for its Vice President of Revenue Management and the managers of its Pricing Department. United objects, however, to plaintiffs' request that it produce all expense reports, diaries, calendars, appointment books and correspondence of its Chief Executive Officer, Stephen M. Wolf ("Wolf"); its Vice Chairman and Chief Financial Officer, John C. Pope ("Pope"); and its Senior Vice President of Planning, Tom Lagow ("Lagow"). According to United, these people are not responsible for establishing or changing United's fares in the ordinary course of business. United argues that these individuals do not fall within the scope of the request and that, if they do, the request is overbroad.

Although United claims that the senior management persons at issue are not involved in the establishment of fares, when asked in Plaintiffs' Interrogatory No. 2 to identify persons "who had the authority to recommend, make, assist in making, or prove decisions with respect to the fares, prices, pricing, and terms and conditions," United made the following response: "Persons who in the ordinary course of business exercise authority to make decisions or establish policies with respect to published fares are Tom Lagow, Senior Vice President–Planning Division.... In addition, Stephen Wolf and John C. Pope, as the Senior Executive Officers of United, from time to time may have become involved in specific decisions concerning United Fares." In addition, Mr. Alvin N. Anderson, Fares Implementation Manager for United, testified at his deposition as follows:

A. The individual price decision can be made at varying levels. The analysts in some cases may have responsibility to respond. In the next case it may require the manager, and the next situation might require the director level and on up the line.

Q. Might go up?

A. Up to Mr. Wolf.

Deposition of Alvin N. Anderson, Exhibit A to Plaintiffs' Motion to Compel Against United, at p. 18.

The Court finds it feasible that Wolf, Pope, and Lagow may have been involved in decision-making or discussions regarding fares. Accordingly, the Court will direct United to respond to Document Request No. 27 as it pertains to these three officials. However, United may redact information clearly not relevant to the request in accordance with the procedure outlined in Part A above.

### IV. *Miscellaneous Objections by Delta*

#### A. Off–Tariff Fare Documents

After review of plaintiffs' reply brief, it appears the parties are in agreement concerning Delta's General Objection No. 15. Accordingly, the Court will enter the protective order requested by defendants concerning off-tariff fare documents. *See* Attachment A. The Court directs defendants to otherwise comply with Plaintiffs' In-

struction No. 6 concerning explanations of redactions.

### B. Communications with the Government

■ Plaintiffs' Document Request No. 11 seeks:

All documents from 1978 forward reflecting, relating or pertaining to communications by you to any federal or state regulatory or legislative body or agency with respect to actual or proposed fares, prices, yields, yield curves, profitability, enplanements, discounts, terms and conditions of domestic passenger air transportation services, hubs, fortress hubs, the ATPC computer system and CRS.

Delta objected to this request on several grounds, including that the request was overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Delta argues that the request would require production of communications between it and several government agencies and Congress relating to matters that have nothing to do with the alleged conspiracy in this case. Delta has offered, instead, to produce official comments to the Department of Justice, the Department of Transportation and the United States Congress, as well as non-privileged documents relating to fares, ATPC, and airline hubs from the files of individuals having responsibility for those matters.

The Court finds Delta's offer of production reasonable and responsive to Document Request No. 11. Plaintiffs have failed to articulate an argument against Delta's offer. Accordingly, the Court will deny plaintiffs' motion to compel against Delta with regard to this request and will direct Delta to produce documents in the form outlined by Delta.

### V. Miscellaneous Objections by USAir

Without a doubt, defendant USAir has had the most objections to plaintiff's discovery requests thus far. The remaining objections require little discussion and will be handled summarily below.

### A. Affiliated and Unaffiliated Commuter Airlines

■ Plaintiffs move to compel USAir to produce responsive documents from the files of its parent, USAir Group, Inc., as well as from the files of the group of commuters flying under the name USAir Express. There are twelve separately-incorporated commuter airlines; four are wholly-owned subsidiaries of USAir Group and eight are unaffiliated with USAir. USAir argues that documents from the twelve commuters are irrelevant insofar as plaintiffs have not alleged that USAir has conspired with any of the commuters to fix prices. In addition, USAir insists that a search of the files of the commuters would be unduly burdensome.

Plaintiffs counter that it is undisputed that the pricing functions of USAir Express are integrated with USAir. In addition, plaintiffs insist that USAir's documents show that the commuters are involved in the creation and maintenance of USAir's hub and spoke system. It is plaintiffs' position that issues involving the hub and spoke system are likely to provide evidence of price fixing.

The Court agrees that information in the files of the commuter airlines operating under the umbrella "USAir Express" may be relevant to plaintiffs' claims in this case. According to USAir, USAir Express is composed of "affiliated commuter carriers" to the extent that at least one division of USAir's Pricing Department works with USAir Express on its pricing. Deposition of Linda Franks Caplan, Exhibit C to Plaintiffs' Motion to Compel Against Defendant USAir at 21. The documents held by the commuter airlines which are a part of USAir Express, particularly those relating to pricing and hub and spoke route system issues, may be just as relevant in this litigation as those documents held by USAir. In addition, USAir has failed to show how searching the files of these related commuters is unduly burdensome.

■ USAir admits that it has control over the documents of the four commuters that are affiliates of USAir. The Court,

therefore, will require USAir to produce documents which are "in the possession, custody, or control of that party." Fed. R.Civ.Pro. 34. USAir has indicated, however, that its only relationship with the eight corporations that are not affiliates of USAir is by way of an agreement which authorizes the commuter to use the name USAir Express. It appears that the files of these commuters are not within the custody or control of USAir. Accordingly, the Court will deny plaintiffs' request with regard to the files of the unaffiliated corporations.

### B. Airports Other Than Hubs Named In Complaint

 In its original response to seven of plaintiffs' discovery requests, USAir objected to providing any response as to airports or hubs other than the hubs named by plaintiffs in the Second Amended Consolidated Class Action Complaint. Defendants claim that information concerning hubs not named in the Amended Complaint is irrelevant and that plaintiffs' request is burdensome.

Plaintiffs argue that a restriction on USAir's responses to hubs listed in the Amended Complaint is unreasonable for two reasons. First, the conspiracy alleged by plaintiffs is alleged to include other individuals and companies, including airlines not named in the Amended Complaint. Information regarding hubs of other airlines not named in the Amended Complaint would be relevant to the litigation. Second, the enumerated requests seek the type of information which will enable plaintiffs to compare information concerning the hubs listed in the Amended Complaint with the same information regarding other hubs and airports.

The Court agrees with plaintiffs that information concerning hubs and airports not named in the Amended Complaint is relevant to the issues in this litigation. For example, as the Court recognized in Pretrial Order No. 3, it is important for plaintiffs to be able to obtain information regarding issues such as yields for traffic to and from the hubs of defendants as well as

that same information for non-class traffic, which includes the information as to hubs and other airports not named in the Amended Complaint. *See* Pretrial Order No. 3 at pp. 25, 28, and 33. Accordingly, the Court finds the request reasonable and will grant plaintiffs' motion with regard to information concerning hubs and airports not named in the Amended Complaint.

### C. Code Sharing and Joint Marketing Agreements with Non–Defendant Airlines

 Document Request No. 38 seeks: All code sharing agreements, joint marketing agreements, or service agreements that you have had with other defendants or airlines (including commuter airlines or carriers).

USAir objects to this request as it relates to non-defendant airlines on the grounds of relevance. Plaintiffs counter that USAir's joint agreements with other airlines—all potential co-conspirators—are relevant to the allegations of plaintiffs' complaint. In addition, plaintiffs argue that any differences between USAir's agreements with airlines that are not co-conspirators and agreements with alleged co-conspirators may assist plaintiffs in further understanding the nature of the price-fixing conspiracy.

The Court agrees with plaintiffs for many of the reasons stated in Part B above and will grant plaintiffs' motion to compel response to Document Request No. 38.

### D. Information Relating to Mergers and Acquisitions

 USAir has provided most of the information sought by plaintiffs in Interrogatory No. 12, which relates to USAir's mergers and acquisitions. The only remaining dispute regarding Interrogatory No. 12 is directed at the reasons for USAir's acquisition of market power and industry concentration. Plaintiffs allege that many of the actions taken by defendants to monopolize certain markets or to concentrate in certain markets are taken for the purpose of facilitating the alleged price-fixing conspiracy. The Court agrees

that USAir's reasons for its mergers and acquisitions are relevant to plaintiffs' claims and directs USAir to respond fully to plaintiffs' Interrogatory No. 12.

■■■ USAir also objects to Document Request Nos. 7, 8, 33, and 44 insofar as they require production of documents concerning mergers and acquisitions of airlines or airport facilities and information regarding market share, percentage of passengers or percentage of enplanements at particular airports. USAir reiterates its argument that information concerning mergers and acquisitions is irrelevant. Review of the filings on this issue indicates that the parties, unbeknownst to them, may be in agreement on this issue. For purposes of clarity, however, the Court will direct USAir to produce all documents responsive to Requests Nos. 7, 8, 33, and 44.

### E. Communications with the Government

■■■ USAir objects to Document Request No. 11 for the same reasons as Delta (see Section IV (B) above) and on the grounds that the request seeks documents dating back to 1978. USAir argues that events as early as 1978 are neither the subject of the Amended Complaint nor actionable because the statute of limitations has expired. Plaintiffs argue that the Amended Complaint in this action alleges a conspiracy beginning *at least as early as 1988*. Plaintiffs do not claim to know exactly when the alleged conspiracy was initiated. Furthermore, plaintiffs argue that 1978 is the year when deregulation of the airline industry began, creating an environment in which conspiracy could take place.

The Court will require USAir to respond to Document Request No. 11 in the limited form outlined in Section III (B) above. Because the Court finds that information dating back to 1978 may be relevant to plaintiffs' claims, the Court will require USAir to include material for the time period 1978 forward. The Court also directs USAir to respond to any other discovery requests that it objected to on the grounds that the time period predates the alleged conspiracy.

## VI. Discovery Schedule

At the inception of this case, the Court directed that merits discovery would proceed concurrently with any discovery concerning class issues. Thus, the parties have already had one and one-half years to obtain information necessary to present their claims or defend their positions. Now that issues concerning certification and notification have been resolved, the Court is prepared to proceed swiftly with disposition of this action, whether by motion or by trial. Listed below is the schedule for any remaining discovery and the filing of motions for summary judgment. The Court will not modify this schedule in any form absent compelling circumstances.

**June 1, 1992** All discovery to be completed.

**July 1, 1992** All motions for summary judgment to be filed.

**July 30, 1992** Responses to motions for summary judgment to be filed.

**August 15, 1992** All replies to be filed.

## VII. Attorneys' Fees and Costs

At one of the initial status conferences in this case, the Court indicated that "if the Court becomes involved [in discovery disputes], attorneys' fees will be assessed against the losing party in every case." Transcript of Proceedings, December 12, 1990, at p. 10. There are no real "losing parties" in the disputes between plaintiffs and American, Delta, and United, and each side will bear its own fees and costs. However, with regard to the discovery disputes between plaintiffs and USAir, plaintiffs have clearly prevailed with only a few exceptions. Accordingly, the Court will direct USAir to bear one-half of plaintiffs' fees and costs incurred in the filing of the motion to compel.

## VIII. Conclusion

The Court GRANTS IN PART and DENIES IN PART plaintiffs' motion to compel against American, Delta, United, and USAir.

The Court DIRECTS plaintiffs to file a statement of fees and costs entailed in the filing of the motion to compel against USAir within 15 days of this order. Any response to plaintiffs' statement by USAir must be filed within 10 days thereafter.

IT IS SO ORDERED.

## ATTACHMENT A

## SUPPLEMENTAL PROTECTIVE ORDER

On December 21, 1990, this Court entered a Stipulated Protective Order (Attachment B to Pretrial Order No. 2) governing the discovery of certain Confidential and Highly Confidential business records of the defendants. Plaintiffs have requested Delta Air Lines, Inc. ("Delta") to produce certain documents relating to fares negotiated between Delta and third parties such as tour operators and travel agents that are not published in ATP and are not otherwise publicly available ("off-tariff fares"). Delta has satisfied the Court that the disclosure of such materials to certain persons who negotiate with Delta for off-tariff fares could injure Delta's business, and thus a higher degree of protection is required for these materials than the Stipulated Protective Order currently provides.

Accordingly, the Court hereby enters the following Order supplementing the Stipulated Protective Order, a copy of which is attached hereto and incorporated herein by reference, and which shall otherwise remain in full force and effect.

1. The protection of this Order may be invoked with respect to any material produced in discovery in this action by Delta relating to off-tariff fares. Such material may be protected by the designation "Off-Tariff Fare" or "OTF" ("Off-Tariff Fare Material"). Such Off-Tariff Fare Material may also be designated as "Highly Confidential" pursuant to the Stipulated Protective Order.

2. Should counsel desire to disclose Off-Tariff Fare Material to any person other than attorneys, employees of Delta, or the Court, its secretaries, clerks and law clerks in the manner set forth in paragraphs 11 and 12 of the Stipulated Protec-

tive Order, Delta shall be given notice and an opportunity to object in accordance with the provisions of subparagraph 5(b) of the Stipulated Protective Order. Any objections to the disclosure of Off-Tariff Fare Material not resolved by agreement shall be presented to the Court for resolution pursuant to the provisions of subparagraph 5(c) of the Stipulated Protective Order.

IT IS SO ORDERED.

## ATTACHMENT B

## STIPULATED PROTECTIVE ORDER

Plaintiffs and defendants, by their Liaison Counsel, and subject to approval of the Court, hereby stipulate to the following Order relating to confidential business information.

1. *Purpose.*

The parties recognize that preparation and trial of this action will require the discovery of certain business records and other materials claimed by one or more of the parties to contain confidential business, commercial or financial information. The parties desire to litigate this action without jeopardizing their business and commercial interests in the confidentiality of this information, and so enter this Stipulated Protective Order ("Order").

2. *Materials Covered.*

The protection of this Order may be invoked with respect to any materials produced in discovery in this action and containing confidential business, commercial or financial information of any party, and any deposition, court filing or discovery request or response containing or referring to confidential business, commercial or financial information. Such materials may be protected by designation at two levels of confidentiality, namely "Confidential" or "Highly Confidential" as described respectively in paragraphs 4 and 5 below.

3. *Disclosure of Documents.*

All materials produced in discovery, including but not limited to, that designated

"Confidential" and "Highly Confidential" shall be used solely in the preparation for trial and/or trial of this action, shall not be used at any time for any other purpose whatsoever and shall not be disclosed to or made accessible to any person except as specifically permitted by this Order.

Each person to whom "Confidential" or "Highly Confidential" material is disclosed shall execute an undertaking in the form annexed hereto as Exhibit A, and shall agree to be bound by this Order. Copies of this executed undertaking shall be retained by counsel disclosing "Confidential" or "Highly Confidential" material to such persons. All executed undertakings shall be filed with the Court under seal and shall be disclosed to a party whose material has been disclosed at the conclusion of the action, or settlement with that party, or on good cause shown.

4. *"Confidential" Material.*

(a) Materials designated as "Confidential" by any party, pursuant to the terms of this Order, may be disclosed by counsel for any other party only for the purpose of this litigation and not for any business or other purpose. Such disclosure may be made only to:

(i) The Court, its secretaries, clerks and law clerks in the manner set forth in paragraphs 11 and 12 below;

(ii) Attorneys in a law firm appearing of record for a party in this action or in any related government proceeding, *in-house* attorneys employed by any party to the litigation and working on this litigation, and their employed secretaries, paralegals and legal assistants (this category hereinafter referred to as "Attorneys");

(iii) Any expert or consultant who is retained by counsel of record for any of the parties in this action to assist counsel in this litigation, and any employee of such an expert assisting in this litigation (this category hereinafter referred to as "Experts");

(iv) Employees of a person assisting counsel in the preparation of the case;

(v) Any person who may testify as a witness either at a deposition or court proceeding in this action for the purpose of assisting in the preparation or examination of the witness.

5. *"Highly Confidential".*

(a) "Highly Confidential" is defined as any material which would materially affect the business, financial or commercial interests of the party producing such material, such as (by way of example but not limitation) transaction prices, cost data, or the identity of customers. "Highly Confidential" material may be disclosed only to:

(i) Attorneys and Experts;

(ii) Employees of the party producing the Highly Confidential material;

(iii) Deponents who are employees of any airline other than the party producing the "Highly Confidential". material (including but not limited to employees of any computer reservation system affiliated with any airline) provided, however, that the terms of subparagraph 5(b) below have been followed;

(iv) Other persons whom counsel disclosing the "Highly Confidential" material believes in good faith should be shown the material as part of that counsel's pretrial investigation, provided that the person to whom the Highly Confidential material is disclosed has first executed an undertaking in the form annexed hereto as Exhibit A, and shall agree to be bound by this Order; and

(v) The Court, its secretaries, clerks and law clerks in the matter set forth in paragraphs 11 and 12 below.

(b) Any counsel proposing to disclose "Highly Confidential" material at the deposition of an employee of any airline other than the party producing the "Highly Confidential" material (including but not limited to an employee of any computer reservation system affiliated with any airline) shall provide, at least 15 days in advance of any such depositions, notice to counsel for the producing party of the identity of such material and the identity of such deponent. Counsel for the producing party shall have

10 days after receipt of notice to object to such disclosure. If no objection is received by proposing counsel within 10 days, the deponent identified may be shown any identified material of the producing party to whom notice has been given which has been marked "Highly Confidential" without further order of the Court. Notice of the proposing counsel's intention to use "Highly Confidential" materials may be used by counsel for the producing party only for the purpose of determining whether to seek additional protection of the identified material. The failure of counsel for the producing party to object to the use of the material in connection with a particular deposition, shall not constitute a waiver with respect to other deponents.

(c) Any objections to disclosing "Highly Confidential" material to any deponent named pursuant to 5(b) above not resolved by agreement of counsel shall be presented for resolution to the Court by the parties involved in a joint motion. This application may be made without notice to any other parties and shall be filed under seal. The burden rests upon the party seeking additional protection of the identified material to demonstrate its necessity.

### 6. *Invocation of this Order.*

The protection of this Order may be invoked with respect to any covered material by the party producing or disclosing such material in the following manner. With respect to documents, the copy of the document when produced shall bear the clear and legible designation "Confidential" or "Highly Confidential." With respect to answers to interrogatories or requests for admission, the pages of these responses containing "Confidential" or "Highly Confidential" information shall be so marked. With respect to any deposition such treatment may be invoked by: (1) declaring the same on the record at the deposition or (2) designating specific pages as "Confidential" or "Highly Confidential" and serving such designations within 30 days of receipt of the transcript of the deposition in which the designations are made. All deposition transcripts shall be treated as "Highly Confidential" for the 30–day period following receipt of the transcript.

### 7. *Challenge to Designation.*

Any party wishing to challenge the "Confidential" or "Highly Confidential" designation assigned by any other party with respect to any material shall give notice of such objection to counsel for the producing party. Any objections to designation not resolved by agreement of counsel shall be presented for resolution to the Court by the parties involved in a joint motion. This application may be made without notice to any other parties and shall be filed under seal. The burden rests upon the party seeking the designation "Confidential" or "Highly Confidential" to demonstrate its necessity.

### 8. *Handling and Disposition of Materials; Handling at Conclusion of Case.*

All material designated "Confidential" or "Highly Confidential" shall remain in the possession of the counsel of record to whom such material is produced, and they shall not permit any such materials to leave their possession, except that copies of such materials may be made for the use of those assisting counsel to whom disclosure may be made under paragraphs 4 and 5, and copies may be submitted to the Court under seal as necessary. Within 60 days after such time as this action is concluded, whether a final adjudication on the merits from which there remains no right of appeal, or by other means, any party producing "Confidential" or "Highly Confidential" material may require the return of all documents and copies containing "Confidential" or "Highly Confidential" materials (including but not limited to copies in the possession or control of any Expert or employee) to the party who produced them.

The original of any "Confidential" or "Highly Confidential" materials which has been produced by any party in this litigation shall not be destroyed except pursuant to a plan therefor to be prepared by the

parties and approved by the Court upon termination of the litigation.

9. *Further Application.*

Nothing in this Order shall preclude any party from applying to the Court for additional or different protective provisions in respect to specific material if the need should arise during this litigation. The Court shall retain jurisdiction over the parties, and over any person executing an undertaking to be bound by the terms of this Order, during the pendency of this action and for such time thereafter as is needed to carry out the terms of this Order.

10. *Information from Third–Party Sources.*

This Order shall apply only to material obtained from parties to any suit involving allegations similar to or identical to those in this case and shall not apply to information in the public domain or obtained from other sources not in violation of this Order or any other agreement regardless of whether or not such information is also contained in discovery materials designated as "Confidential" or "Highly Confidential" in this case.

11. *Use in Court Proceedings.*

Nothing contained in this Order shall be construed to prejudice any party's right to use at trial or in any hearing before the Court and "Confidential" or "Highly Confidential" material, provided that reasonable notice of the intended use of such material (e.g. a pretrial order) shall be given to opposing counsel. The opposing party may apply to the Court for further protection of the confidentiality of such material.

12. *Filing in Court.*

No "Confidential" or "Highly Confidential" materials shall be filed in the public record of this action. All material so designated in accordance with the terms of this Stipulated Protective Order that is filed with the Court, and any pleadings, motions, or other papers filed with the Court disclosing any such material, shall be filed in a sealed envelope and kept under seal by the Clerk of this Court until further order of the Court. Where possible, only "Confidential" or "Highly Confidential" portions of filings with the Court shall be filed under seal.

To facilitate compliance with this Order by the Clerk's office, material filed under these designations shall be contained in a sealed envelope bearing the appropriate designation on its front face. In addition, the envelope shall bear the caption of the case, shall contain a concise, non-disclosing inventory of its contents for docketing purposes, and shall state thereon that it is filed under the terms of this Order.

13. *Reservation of Rights.*

By designating any material "Confidential" or "Highly Confidential" the parties do not acknowledge that any such material is relevant or discoverable in this action. All parties reserve the right to seek discovery of, or alternatively to resist discovery of, such material in this action. Designations of "Confidential" or "Highly Confidential" shall not be made known to the jury in any manner.

14. *Modification.*

Any of the parties may modify any of the provisions of this Order by written agreement between or among themselves so long as any such agreement among less than all of the parties does not affect the rights, duties and obligations of any other party.

SO STIPULATED:

(s) <u>W. Pitts Carr</u>

W. Pitts Carr

State Bar No. 112100

Carr, Tabb & Pope

1355 Peachtree St., N.E.

Suite 2000

Atlanta, Georgia 30309

Plaintiffs' Liaison Counsel

(s) Emmet J. Bondurant, II
Emmet J. Bondurant, II
State Bar No. 066900
Bondurant, Mixson & Elmore
3900 IBM Tower
1201 W. Peachtree St., N.W.
Atlanta, Georgia 30309
Defendants' Liaison Counsel
SO ORDERED:

(s) Marvin H. Shoob
Marvin H. Shoob, Judge
United States District Court
Northern District of Georgia